UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2009-082 (WOB-JGW)

ANTHONY HOLT, ET AL.                              PLAINTIFFS

VS.                     MEMORANDUM OPINION AND ORDER

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                            DEFENDANTS


     This is an action by former detainees at the Campbell
County Detention Center (CCDC) against the County and
Southern Health Partners (SHP) alleging cruel and unusual
punishment in violation of the 8th and 14th Amendments and
plaintiffs' civil rights under 42 U.S.C. § 1983.  Plaintiffs
also allege state law claims.

     This matter is currently before the Court on the
motion of the Campbell County defendants for partial
summary judgment as to plaintiff, David Weber (Doc. #132),
and the motion of Southern Health Partners for summary
judgment as to plaintiff, David Weber (Doc. #210).

     Having reviewed the parties' supplemental letter
briefs (Doc. 242), the Court concludes that oral argument
is unnecessary to the resolution of these motions.  The
Court therefore issues the following Memorandum Opinion and
Order.

### *Factual and Procedural Background*

**A.    Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 132-1).   SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.   These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on June 17, 2009, as a proposed class action.  (Doc. 1).  On June 1, 2010, plaintiff filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 38). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 8th and 14th Amendment rights.  (Doc. 38 ¶¶ 331-32).  Plaintiffs also allege negligent or intentional infliction of emotional distress, negligence, loss of consortium, and wrongful death.

On July 9, 2010, this Court denied plaintiffs' motion for class certification.  (Doc. 48).  Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

2

B.   **Plaintiff David Weber**

Plaintiff David Weber ("Weber") was incarcerated at the CCDC from September 12, 2007 to August 6, 2008. Approximately a year before his incarceration, Weber had suffered a work-related ankle sprain for which he had been prescribed Lyrica (a nerve block), Elavil (antidepressant), and Percocet.  At the time of booking, Weber reported that he was being treated for nerve damage in his left leg below the knee and drug withdrawal, and he also reported that he had a history of seizures and drug dependency problems. (Doc. 210-3).

The day after he was admitted, Weber submitted a sick call slip complaining of "nerves & panic attack voices every once in a while mind is racing no sleep but very little clostephobic [*sic*]." (Doc. 210-4).  The SHP medical staff obtained his medical records, which stated that Weber had a history of "polysubstance" abuse, including opiates; that he "feigned" illness; that he had presented at the St. Elizabeth Medical Center on May 29, 2007, threatening suicide if something was not done about his pain and he became "very hostile and uncooperative" when told that his Percocet would not be continued; that he had been going to various area emergency rooms to get narcotics; and that he was "rather manipulative in regards to his pain condition."

3

(Doc. 210-8, Doc. 132 Exh. 4).

Based on this information and on their examinations of Weber, SHP medical staff provided Weber with over-the-counter pain medications, medication for his seizures which also is used to decrease nerve pain, and, in June 2008, Elavil.  Weber submitted numerous sick call requests on various issues, including pain in his left and right leg. He was examined by medical staff, who found no objective indications of abnormalities.

On June 8, 2008, Weber wrote a grievance addressed to Chief Deputy Jim Daley complaining about Nurse Amanda Pangallo's "smart mouth" and the delay in providing him with Tylenol.  (Doc. 132-20).  Daley requested information from the medical staff and, on June 16, 2008, responded to Weber:

> Mr. Weber, I am in receipt of your grievance dated
> June 8, 2008.  Information from your grievance was
> sent to medical for a response and a response was
> received on June 10, 2008.  The information provided
> was that you were seen originally on May 29, 2008 and
> placed on medicine for pain in your leg.
> Additionally, it is my understanding that you were
> seen on June 10, 2008 and assessed for further
> treatment and that you would be put on different
> medication for pain as necessary.
>
> Concerning the issues you have with medical staff,
> these concerns were forwarded to the medical
> department for investigation.  I will follow up with
> the medical supervisor to determine what issues exist
> and what action is to be taken concerning their
> personnel.

(Doc. 132-21).

On June 30, 2008, Weber submitted another grievance, thanking Daley for "getting my medicine the first time" but complaining that the medical staff had "run out" of his pain medication. (Doc. 132-22). Daley investigated the matter and responded to Weber on July 14, 2008:

> I reviewed your grievance and medical records relative to same. Records indicate that you are getting the medicines that you are supposed to get. The one exception appears to be one day records indicate you did not get up for med pass.
>
> Beyond the above I can not see that you are not getting any medicine that you are supposed to be getting. If there are additional medicines that you are supposed to be getting please provide the details and I can follow up with the medical department.

(Doc. 132-23).

While incarcerated at CCDC, Weber never spoke to Buckler, the Jailer. (Weber Depo. 33).

Upon discharge from the CCDC, Weber returned to his treating physician and was again prescribed various narcotic pain medications.

## *Analysis*[1]

### A.   Legal Standards

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of

---

[1] Weber concedes that CCDC defendants Fickenscher and "Fisher" and SHP defendants Ernest and Dawes should be dismissed. There is no defendant named "Fisher" – it appears that plaintiff meant defendant "Fletcher."

deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013)

(citation omitted).

### B.   Qualified Immunity

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity.  All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### C.   Application to Weber's Claims

The parties disagree as to whether plaintiff's ankle pain constitutes a "serious medical condition" for Eighth

Amendment purposes.[2]  The Court will assume for purpose of the present motions that plaintiff's ankle pain satisfies this requirement.

The Court next must examine the facts as they pertain to each defendant.  *See Phillips v. Roane County, Tenn.*, 534 F.3d 531, 542 (6th Cir. 2008) (noting that where court is faced with multiple defendants asserting qualified immunity defenses, it must "consider whether each individual defendant had a sufficiently culpable state of mind").

### 1.   Campbell County Defendants

Plaintiff concedes that Greg Buckler, the former Jailer, had no contact with plaintiff during his incarceration, nor was Buckler involved in any of the medical decisions involving plaintiff.  Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler is thus entitled to summary judgment.[3]

---

[2] Plaintiff testified in his deposition that he is only pursuing claims based on defendants' treatment of his ankle/leg pain.  (Weber Depo. 45).  The Court thus does not address here counsel's arguments regarding mental health issues.

[3] Plaintiff argues that Buckler was aware of general problems with the medical contractor at the CCDC.  That, however, provides no basis for the claim against him in his individual capacity where it is undisputed that Buckler played no role in plaintiff's care.

Jim Daley's only involvement with plaintiff was to deny the two grievances that plaintiff filed, after checking with the medical staff regarding the treatment that plaintiff received.  "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Serv.*, 73 F. App'x 839, 841 (6th Cir. 2003) (citing cases holding that denial of grievance is not the same as the denial of a request to receive medical care); *Sharpe v. Patton*, Civil Action No. 08-CV-58-HRW, 2010 WL 227702, at *8 (E.D. Ky. Jan. 19, 2010) (denial of grievance concerning medical treatment "does not constitute sufficient involvement to establish liability under" § 1983).[4]

As to Campbell County itself, plaintiff's claim fails because he has shown no violation of his constitutional rights.  *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Moreover, plaintiff actually admits – perhaps inadvertently – that Campbell County has adequate policies

---

[4] There are four CCDC deputies also named in the Complaint (Craig, Young, Cummins, and Music), but plaintiff has cited no evidence that they were involved with plaintiff or his medical care.

10

in place concerning inmate medical care.  (Doc. 158 at 22).
Although plaintiff alleges those policies were not followed
here, such an allegation does not advance his municipal
liability claim.  *See Graham v. County of Washtenaw*, 358
F.3d 377, 385 (6th Cir. 2004) ("There can be no municipal
liability where an otherwise sound program has occasionally
been negligently administered.") (citation and internal
quotations omitted).

Plaintiff also has adduced no admissible evidence of a
clear and persistent pattern of deliberate indifference to
inmate medical needs.  This Court has already held in
another case that the same affidavits submitted by
plaintiff here regarding allegedly poor care at the CCDC
are: (1) inadmissible for a variety of reasons, and (2)
even if admissible, inadequate as a matter of law to
support a municipal liability claim against Campbell
County.  *Fryman v. Campbell County*, Covington Civil Action
No. 09-114-WOB-JGW, Docs. 25, 30.[5]

The Campbell County defendants are thus all entitled
to summary judgment.[6]

---

[5] The Court thus need not reach plaintiff's argument that
the CCDC maintains a "no narcotics" policy.

[6]  The Court thus need not reach the issue of qualified
immunity, although the individual defendants would
obviously be entitled to that defense given the absence of

## 2.   Southern Health Partner Defendants[7]

Plaintiff's Eighth Amendment claim against the medical staff rests almost exclusively on the fact that he did not receive prescription-strength narcotic and non-narcotic pain relievers but was instead given Ibuprofen, Tylenol, Percogesic, anti-inflammatories, and Ace bandages to address his ankle pain.

It is not disputed that SHP nurses responded to plaintiff's sick call slips by evaluating him and prescribing him pain and other medications throughout his incarceration.  After reviewing plaintiff's medical records which showed that plaintiffs had a history of opioid abuse, SHP determined not to prescribe plaintiff the narcotic medications he had been taking prior to booking in at the CCDC.  Plaintiff has shown no evidence that the SHP medical personnel, in choosing which medications to give plaintiff, subjectively perceived any risk of serious harm to

---

any constitutional violation.

[7] Apart from mentioning defendants Pangallo and Mullins specifically as having signed two of plaintiff's sick call slips (Doc. 216 at 13), plaintiff fails to explain which of the SHP defendants dealt with plaintiff on which occasions, or how they individually demonstrated "deliberate indifference" to his medical needs.  Instead, plaintiff simply refers to SHP's actions collectively.  However, because the evidence does not demonstrate any deliberate indifference even as to the actions of SHP viewed as a whole, the Court need not parse out these details, on which plaintiff bears the burden.

plaintiff and then disregarded that risk.

This case is similar to *Holloway v. Delaware County Sheriff*, 700 F.3d 1063 (7th Cir. 2012), in which the Seventh Circuit recently rejected an Eighth Amendment claim by a detainee who suffered from a chronic pain condition. Prior to his incarceration, the plaintiff had been prescribed Oxycontin to treat his pain. *Id.* at 1066. The jail physician did not believe that Oxycontin was necessary and instead prescribed the plaintiff non-narcotic pain medications. When the plaintiff was eventually released, his doctor again prescribed him Oxycontin.

The plaintiff sued under § 1983 claiming that he experienced intense pain because the medication prescribed by the jail doctors was insufficient to treat his pain. *Id.* at 1073. The Seventh Circuit affirmed the grant of summary judgment to the jail doctor and nurses, stating:

> Surely Holloway would have preferred to have been treated by a doctor who would have prescribed Oxycontin to treat his chronic pain rather than the nonnarcotic substitutes, but a prisoner is not entitled to receive "unqualified access to healthcare." . . . Instead, prisoners are entitled only to "adequate medical care." . . . For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Id.* (citations omitted).

13

The Court further held that prison medical personnel need not "defer to the judgment of a doctor who treated an inmate prior to his detention." *Id.* at 1074. "Rather, the prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standard." *Id.* (citations omitted).

The same outcome is warranted here. While plaintiff would have preferred the drugs he took prior to entering the CCDC, it is well established that a difference of opinion as to the approach to an inmate's medical treatment does not demonstrate the "deliberate indifference" necessary to state a claim under the Eighth Amendment. *See White v. Corr. Med. Serv., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("Although White did not receive the care he wanted, the conduct he alleged did not constitute a deliberate indifference to his medical needs."); *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (noting that where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims

14

that sound in state tort law.") (citation omitted); *Alder v. Corr. Med. Serv.*, 73 F. App'x 839, 841-42 (6th Cir. 2003) (difference of opinion as to treatment does not rise to level of Eighth Amendment violation); *McKee v. Turner*, No. 96-3446, 1997 WL 525680, at *5 (6th Cir. Aug. 25, 1997); *Sharpe v. Patton*, Civil Action No. 08-CV-58-HRW, 2010 WL 227702, at *10-11 (E.D. Ky. Jan. 19, 2010).

Finally, the report of plaintiff's expert witness, Dr. Joseph Parris, raises no triable issue. (Doc. 158-1 at 15-25). First, the report contains no opinion that implicates the CCDC defendants. As to SHP, Parris states that it is "understandable that Campbell County Jail staff would be reluctant to place Weber on narcotics in view of his previous history of drug abuse." (*Id.* at 24). Although Dr. Parris then opines that the medical staff should have provided plaintiff with different medications, and that the failure to do so "conforms to a pattern of deliberate indifference," (*id.* at 25), such an opinion as to conclusion of law is inadmissible. *Cutlip v. City of Toledo*, 488 F. App'x 107, 119-20 (6th Cir. 2012) (citation omitted).

Finally, Dr. Parris's report is silent as to the subjective perception of these defendants, and the record thus remains devoid of evidence that would satisfy this

15

element.

All defendants are thus entitled to summary judgment on Weber's § 1983 claim.  Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Weber's state law claims.  *See* 28 U.S.C. § 1367(c).


Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the motion of the Campbell County defendants for partial summary judgment as to plaintiff, David Weber (Doc. #132) be, and is hereby, **GRANTED;** (2) the motion of Southern Health Partners for summary judgment as to plaintiff, David Weber (Doc. #210) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM**; and (3) Plaintiff David Weber's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**


This 7th day of June, 2013.




Signed By:

*William O. Bertelsman*

United States District Judge