UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2009-082 (WOB-JGW)

ANTHONY HOLT, ET AL.                                    PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                                  DEFENDANTS

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the County and Southern Health Partners (SHP) alleging cruel and unusual punishment in violation of the 8th and 14th Amendments and plaintiffs' civil rights under 42 U.S.C. § 1983.  Plaintiffs also allege state law claims.

This matter is currently before the Court on the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Jeffrey Clint Turner (Doc. 138), and the motion of Southern Health Partners for summary judgment as to plaintiff, Jeffrey Clint Turner. (Doc. 211).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of these motions.  The Court therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

**A.   Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 132-1).  SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on June 17, 2009, as a proposed class action.  (Doc. 1).  On June 1, 2010, plaintiff filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 38). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 8th and 14th Amendment rights.  (Doc. 38 ¶¶ 331-32).  Plaintiffs also allege negligent or intentional infliction of emotional distress, negligence, loss of consortium, and wrongful death.

On July 9, 2010, this Court denied plaintiffs' motion for class certification.  (Doc. 48).  Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

B.  **Plaintiff Jeffrey Clint Turner**

Plaintiff Jeffrey Clint Turner ("Turner") was incarcerated at the CCDC from August 21, 2008 to May 4, 2009. Although Turner alleges that he had been previously diagnosed with hepatitis C, Wilson's Disease, and anemia, at the time he was incarcerated he was not undergoing any treatment for those conditions.[1] (Turner Depo. 52). The Medical Condition/Health History Profile form completed by a deputy at booking indicates that Turner reported diagnoses of Wilson's Disease and hepatitis/jaundice. (Doc. 138-4). Turner testified, however, that he did not tell the deputies that he needed any treatment because it was "irrelevant." (Turner Depo. 63-65).

The day after he was booked into the CCDC, Turner was examined by SHP medical staff, and a nurse completed a Medical Intake Screening form. Turner indicated on this form that he had no medical conditions and had been prescribed valium on occasion. (Doc. 138-5).

---

[1] Turner had been diagnosed with anemia and hepatitis C in 2007 while incarcerated at the Hardin County Detention Center, at which time he disclosed that he had a 7-year IV heroin habit. He was treated for the anemia at a local hospital with a blood transfusion and iron supplements. (Doc. 138-8 at 3). He was no longer taking the iron supplements at the time he was booked into the CCDC. (Turner Depo. 137). As Turner's own expert notes, there is no documentation of Turner's alleged diagnosis of Wilson's Disease, a disorder of the liver that causes a buildup of copper in the body. (Doc. 138-8 at 4-5).

3

In October 2008, Turner requested lotion for dry skin and, on October 26, 2008, he requested dental services for a tooth that he reported he had been having problems with for several months. When he was not promptly seen for the dental problem, Turner sent another request and, on November 30, 2008, he was issued pain medication and was assured he was on the dentist's list. Turner had two teeth pulled on December 30, 2008.

Between November 2008 and February 2009, Turner submitted four sick call requests for rashes, follow up on his teeth, and allergies, all of which were responded to by the medical staff.

Turner alleges that for a few weeks in November/December 2008, 3-7 days in January 2009, and 3-7 days in February or March, 2009, he experienced headaches, nausea, lightheadedness, fatigue and a feeling which made him suspect he was bleeding internally. (Turner Depo. 70-77). He alleges that he submitted sick call slips during these spells directly to the nurses on duty, but the jail records contain no such slips. (Turner Depo. 77-78). Although Turner's responsive memoranda argue that he received no responses to these medical requests, Turner testified in his deposition that he was seen by nurses in response to these sick call slips. Specifically, the

nurses would ask him about his symptoms, take his vital signs and temperature, and they once drew his blood, although he did not learn any results from the blood tests. (Turner Depo. 135-36).

On April 10, 2009, Turner completed an Inmate Sick Call Slip stating as his problem: "sick to stomach, headaches." (Doc. 138-6). However, Turner subsequently refused treatment, stating "issue resolved." (Doc. 138-7).

Turner filed no grievances at the CCDC during this incarceration. (Turner Depo. 40).

Turner was discharged from the CCDC on May 4, 2009.

Following his discharge, Turner went to the emergency room at St. Elizabeth Hospital in Ft. Thomas complaining of fatigue and lightheadedness. Blood tests were done, and the hospital staff told Turner he was "fine." (Turner Depo. 56-57, 80).

*Analysis*

A. <u>Legal Standards</u>

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

5

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived

6

facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

B. **Qualified Immunity**

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity. All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

7

reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

    C.    <u>Application to Turner's Claims</u>

        1.    **Objectively Serious Medical Condition**

Turner's deliberate indifference claim fails as a matter of law. First, no reasonable jury could find that, at the time he was incarcerated at the CCDC in 2008-2009, Turner was suffering from an objectively serious medical condition requiring treatment.

"A plaintiff may establish the serious medical needs requirement in one of two ways. First a medical need is sufficiently serious if it is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).

Second, "if the medical need is less obvious, its seriousness is evaluated by the effect of delay in

8

treatment," and plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.*

Turner testified that the fatigue and nausea he experienced could not be observed by another person. (Turner Depo. 87)  Under the above standard, therefore, Turner must produce verifying medical evidence to demonstrate a detrimental effect of the alleged delay in treatment.

As to the existence or seriousness of his alleged medical conditions, Turner testified that he has never received any treatment for his alleged condition of Wilson's disease, that he is not even sure he actually has hepatitis C, and that he has never received any treatment for that condition.  (Turner Depo. 52-54).  The only treatment he received for anemia after being released from Hardin County, prior to his CCDC incarceration, was to take over-the-counter iron pills.  (Turner Depo. 59).

Plaintiffs' expert, Dr. Joseph Paris, opined that there is no evidence that Turner had actually been diagnosed with Wilson's Disease or that he was ever on any medications for such a condition.  (Doc. 138-8 at 4-5). Dr. Paris also opined with respect to Tuner's hepatitis C that Turner was "asymptomatic" while incarcerated at the

9

CCDC and that he was not a candidate for the lengthy hepatitis treatment regimen because he was incarcerated for only nine months. (*Id.* at 5).

As to any detrimental effects resulting from the alleged denial of proper medical treatment, Dr. Paris opined: "None known." (*Id.*). Turner, in fact, testified that he had received no medical care for his alleged conditions since being released from Hardin County in early 2008. (Turner Depo. 47, 84). He also testified that he had no physical injury as a result of the alleged denial of care at the CCDC and that he cannot say that his condition is any worse than prior to his incarceration. (Turner Depo. 103-04).

After he was released from the CCDC in 2009, Turner made one visit to the emergency room (because he had no family doctor) due to fatigue, lightheadedness, and shortness of breath. The ER staff performed blood work on him and told him he was fine. (Turner Depo. 57).

Turner thus cannot show as a matter of law that, while incarcerated at the CCDC, he suffered from a serious medical condition cognizable under the Eighth Amendment. All defendants are thus entitled to summary judgment on Turner's § 1983 claim on this basis.

### 2. Deliberate Indifference

Second, there is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to Turner's medical needs. His own expert, Dr. Paris, opined: "All of Turner's requests prompted a medical visit and appropriate treatments." (Doc. 138-8 at 4). Dr. Paris's only criticism was that it took "a bit long" for Turner's tooth extraction. (*Id.*).

Specifically as to the CCDC defendants, it is not disputed that the deputy jailers do not make decisions as to which inmates receive medical care or what care they receive; rather, those decisions are made by the medical staff. (Turner Depo. 82-83). Inmates submit sick call slips directly to the nurses, who decide what action to take in response. (*Id.*).

Moreover, Turner testified that he does not know who Jim Daley is and has never seen him or talked to him. (Turner Depo. 44). He further testified that he never spoke to defendants Buckler, Fletcher, or Fickenscher regarding his medical care. (Turner Depo. 45-46).

For these reasons, all the CCDC defendants are entitled to summary judgment.

As to the SHP defendants, Turner testified that he should have seen a doctor and had his blood drawn "to make

11

sure my health and safety wasn't at risk." (Turner Depo. 68-69, 83). He testified that the nursing staff told him that such tests would not be done absent some physical need, although he concedes his blood was drawn once. (Turner Depo. 69).

Accepting these allegations and arguments as true, no reasonable jury could find that the SHP defendants were deliberately indifferent to a risk of serious harm to Turner's health. He concedes that he was under no medical order to have his blood tested on a regular basis, although a doctor had previously told him it might be a "good idea." (Turner Depo. 69). Turner has submitted no authority that a failure to provide essentially preventative medical care constitutes deliberate indifference.

Moreover, as noted, Turner's alleged symptoms were not readily apparent to an observer, and the denial of his alleged multiple requests to have his blood drawn was based on the nurses' observation that he exhibited no symptoms of illness.

It is further undisputed that the responses to all the other medical requests Tuner made during his stay at CCDC were, as his own expert states, "appropriate."

Turner thus cannot raise a triable issue as to whether the medical staff perceived a serious risk to his health

12

and then ignored that risk.

With no underlying constitutional violation, Turner can state no "municipal liability" claim as to Campbell County and SHP.  *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

All defendants are thus entitled to summary judgment on Turner's § 1983 claim.  Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Turner's state law claims.  *See* 28 U.S.C. § 1367(c).


Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Jeffrey Clint Turner (Doc. 138) be, and is hereby, **GRANTED;** (2) the motion of Southern Health Partners for summary judgment as to plaintiff, Jeffrey Clint Turner (Doc. 211) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** and (3) Plaintiff Jeffrey Clint Turner's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**

13

This 19th day of June, 2013.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

Case: 2:09-cv-00082-WOB-JGW   Doc #: 244   Filed: 06/19/13   Page: 14 of 14 - Page ID#: 5699