UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2009-082 (WOB-JGW)

ANTHONY HOLT, ET AL.                                        PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                                      DEFENDANTS


This is an action by former detainees at the Campbell County Detention Center (CCDC) against the County and Southern Health Partners (SHP) alleging cruel and unusual punishment in violation of the 8th and 14th Amendments and plaintiffs' civil rights under 42 U.S.C. § 1983.  Plaintiffs also allege state law claims.

This matter is currently before the Court on the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Elmer Ray Turner (Doc. 134), and the motion of Southern Health Partners for summary judgment as to plaintiff, Elmer Ray Turner. (Doc. 212).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of these motions.  The Court therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

**A.   Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 132-1).  SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on June 17, 2009, as a proposed class action.  (Doc. 1).  On June 1, 2010, plaintiff filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 38). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 8th and 14th Amendment rights.  (Doc. 38 ¶¶ 331-32).  Plaintiffs also allege negligent or intentional infliction of emotional distress, negligence, loss of consortium, and wrongful death.

On July 9, 2010, this Court denied plaintiffs' motion for class certification.  (Doc. 48).  Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

### B. Plaintiff Elmer Ray Turner

Plaintiff Elmer Ray Turner ("Turner") was incarcerated at the CCDC from October 6, 2009 to November 13, 2009, just over one month. (Turner Depo. at 13-14) (Doc. 153).

#### 1. "Greens" Allergy

At the time he was booked into the CCDC, Turner told the CCDC staff that he was not undergoing any current medical treatment and did not have any of twenty-one listed medical conditions. However, he stated that that he was allergic to "greens." (Doc. 134 Exh. D).

Turner testified that his assertion that he was allergic to "greens" was based on the fact the he was told by his pediatrician some forty years ago[1] not to eat greens after Turner complained they made him sick. (Turner Depo. at 89-90). Turner alleges that the CCDC did not provide him with an alternate vegetable choice and a daily multivitamin that he needs as a result of this allergy.

On October 18, 2009, Turner made a written complaint to Colonel Nagle, complaining that the prior jail doctor had ordered him supplements, but that the current medical staff told him that he needed documentation from a doctor to support his request. (Doc. 134 Exh. E).

---

[1] Turner was forty-seven years old when he was booked into the CCDC.

3

Two days later, on October 20, 2009, Turner submitted a sick call slip, stating: "Reminder! Foot fungus, teeth hurt, Neosporin and allergic [sic] to greens." (*Id.* Exh. F). When the medical staff requested that Turner sign a release so that they could obtain records regarding his allergy from his doctor, Turner refused. (*Id.* Exh. G). However, Turner denies that he refused to sign this release. (Turner Depo. at 161-62).

On October 29, 2009, Lt. Col. Fickenscher responded to Turner's complaint to Nagle:

> Inmate Turner, I am in receipt of your grievance. This information was passed to medical for information for a response in regard to the medical issues in your note. Medical has advised that they asked you to sign a Release of Information so that they could get your allergy records, but you refused. Medical cannot request a different tray for you without proof of your allergy. Please cooperate with them and sign the release.

(*Id.* Exh. H).

Turner made no further complaints about his greens allergy while incarcerated at the CCDC. He also testified that he has had no ongoing problems as a result of not getting supplements while at the CCDC. (Turner Depo. 195).

### 2. Borderline Diabetes

Although not alleged in his complaint, Turner testified in his deposition that he is "borderline diabetic," although he has never been diagnosed as such and

4

has never been treated by a doctor for this alleged condition. (Turner Depo. at 89, 93-95). When booked into the CCDC, Turner did not ask for medical treatment, and he did not check the box marked "diabetes" on the medical history form. (Turner Depo. at 114, Doc. 134 Exh. D).[2] However, he testified that the medical staff at the CCDC tested his sugar at least once, and that "it tested high" but nothing was done. (Turner Depo. at 108, 149). Turner further testified that while he sometimes felt "shaky," he never requested medical attention for it. (Turner Depo. 194). He has not experienced any ongoing problems as a result. (Turner Depo. 196).

### 3. Mold and Sewage Leaks

Third, Turner alleges that he was housed in Cell 105 which was infected with black mold, and that urine leaked from walls and ceilings when the toilets in the cells above were flushed, causing him headaches, sinus issues, and respiratory problems. (Sec. Am. Compl. ¶¶ 182-89) (Doc. 38); (Turner Depo. 97). In his deposition, Turner

---

[2] Plaintiffs' expert, Dr. Joseph Paris apparently reviewed records from a period when Turner was incarcerated at the CCDC some six months before the incarceration at issue in this case. (Doc. 212-16 at 1). Dr. Paris states that those records reflect that the medical staff tested Turner for diabetes, but that the results "are consistent with an individual . . . who probably is not overtly diabetic." (*Id.*).

5

testified that his symptoms were "[n]ot really that severe" or anything that he would cause him to see a doctor. (Turner Depo. at 129-32). Rather, the symptoms were akin to feeling like he had a cold. (*Id.* at 132).

On October 10, 2009, Turner submitted a sick call slip complaining about the mold in the cell and stating that he had developed a headache and cough. (Doc. 134 Exh. I). Turner was seen by medical staff four days later, but he refused treatment. (*Id.* Exh. J).

After approximately ten days, the jail fixed the plumbing problems causing the leaks. (Turner Depo. at 126-27). Turner was then transferred to a different cell for a period of time, and when he was transferred back to Cell 105, the jail began painting and correcting the mold problem. (*Id.*).

Turner also wrote a letter to the Department of Corrections ("DOC") complaining about the mold and leaks. (*Id.* Exh. K). The DOC forwarded this letter to defendant Buckler on October 26, 2009, who forwarded it to staff with the direction to investigate Turner's allegations regarding the mold. (*Id.* Exh. L). Lt. Lisa Fletcher inspected the cells and responded to the Captain in charge, explaining that the "entire back pod" had been recently washed with a mold and mildew machine; the showers had been sprayed; and

6

her inspection revealed no mold in Cell 105 nor any leaks, but she had nonetheless asked the supervisor to treat the cell again with mold and mildew spray. (*Id.* Exh. M). Fletcher also stated that the cells were scheduled to be painted shortly.

Finally, Turner testified that he has no physical injuries from the conditions in the CCDC about which he complains, although he sometimes has headaches. (Turner Depo. at 96-98). However, he does not know if the headaches are related to the mold at the CCDC. (Turner Depo. at 196).

### *Analysis*

**A.  Legal Standards**

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment

7

prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived

but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

**B.** **Qualified Immunity**

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity. All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact,

9

or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### C. Application to Turner's Claims

#### 1. Objectively Serious Medical Condition

Having reviewed the record, the Court concludes that Turner's deliberate indifference claim fails as a matter of law.  First, no reasonable jury could find that, at the time he was incarcerated at the CCDC in late 2009, Turner was suffering from an objectively serious medical condition requiring treatment.

"A plaintiff may establish the serious medical needs requirement in one of two ways.  First a medical need is sufficiently serious if it is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).

Second, "if the medical need is less obvious, its seriousness is evaluated by the effect of delay in treatment," and plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Id.*

There is no evidence that Turner was ever diagnosed as

10

having an actual allergy to greens or that he was "borderline" diabetic. At the time that he booked into the CCDC, he indicated that he was under no medical care and was not taking any medications. (Doc. 134 Exh. D).

Plaintiffs' expert, Dr. Paris, noted that available records indicated that Turner "probably is not overtly diabetic." (Doc. 212-16 at 1). Turner had produced no verifying medical evidence that, at the time of this incarceration, he was diabetic and that the lack of medical treatment for such a condition at the CCDC caused him harm. Indeed, Turner wholly fails to address his diabetes in his responsive memorandum.

Dr. Paris further noted that Turner's claim of an allergy to all greens "is not supported by the medical literature;" that Turner had no medical documentation of such an allergy; that Turner "may have been expressing a food preference;" and that Turner had no incidental medical complications from this claimed condition. (*Id.*). Dr. Paris thus declined to opine on the question of Turner's allergy. (*Id.* at 2).

Finally, there is no evidence that Turner's sinus and respiratory problems allegedly resulting from his exposure to mold in Cell 105 rose to the level of a serious medical condition. Turner testified that his symptoms were not

11

really serious and were akin to having a cold. (Turner Depo. at 129-32). Further, Turner was in Cell 105 for a relatively short duration of time before the problems were fixed.

Turner thus cannot show as a matter of law that, while incarcerated at the CCDC, he suffered from a serious medical condition cognizable under the Eighth Amendment. All defendants are thus entitled to summary judgment on Turner's § 1983 claim on this basis.

### 2. Deliberate Indifference

Even if Turner could establish that he suffered from a serious health condition, there is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to his medical needs.

#### a. CCDC Defendants

As to the CCDC, Turner did not provide any medical documentation of his need for special meals due to his alleged greens allergy. That he claims he did not refuse to sign the medical release is immaterial, as it is nonetheless undisputed that he knew it was the jail's position that such a request for special meals could not be accommodated without such documentation, which Turner himself could have taken steps to obtain.

Further, Turner has not shown that the CCDC perceived

12

any substantial risk to his health by not providing alternative vegetables or a daily multivitamin, particularly given the relatively short duration of his stay. While Turner testified that he thought he lost weight during his approximately month-long stay, (Turner Depo. at 160), he also testified that it was not so much that someone else would have noticed. (Turner Depo. at 165).[3]

As to the mold and leaks in Cell 105, Turner testified that the plumbing issues were corrected in approximately ten days. While being in proximity to such conditions would no doubt be unpleasant, such a brief exposure cannot be said to rise to the level of punishment, whether Turner's claim is couched as a denial of medical treatment claim or a conditions of confinement claim. Further, upon receipt of Turner's complaint to the DOC, Buckler took prompt measures with respect to the alleged mold and mildew, even though Lt. Fletcher reported that she observed no mold in Cell 105.

---

[3] Q: Do you think you lost so much weight during your incarceration at the jail that, you know, anyone who walked up to you would know that you're starving?
  A: No, I wouldn't say that.
  Q: So it wouldn't have been apparent that you were, you know starving?
  A: I wasn't there that long.

(Turner Depo. at 166).

13

As to any other issue with Buckler or defendant Jim Daley, Turner testified that he had no personal interaction with them. (Turner Depo. at 75-76). Indeed, the CCDC has introduced undisputed evidence that Daley was not employed at the CCDC during this time period.

Finally, for the above reasons, there is no evidence that defendants Fletcher and Fickenscher were indifferent to Turner's allegedly serious medical needs.[4]

With no underlying constitutional violation, Turner can state no "municipal liability" claim as to Campbell County. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).[5]

For these reasons, all the CCDC defendants are

---

[4] Turner makes no arguments in his response regarding defendant Fletcher.

[5] Plaintiff also has adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs. This Court has already held in another case that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

entitled to summary judgment.[6]

### b. SHP Defendants[7]

The SHP defendants are also entitled to summary judgment because Turner cannot show that he suffered from a "serious health condition" during the incarceration at issue here.

Moreover, even accepting plaintiff's allegations, no reasonable jury could find that the SHP defendants were deliberately indifferent to a risk of serious harm to Turner's health.

Turner claims that SHP defendant Josh Ernest told plaintiff that they did not have to treat Turner's alleged greens allergy. This states no claim of deliberate indifference because it is undisputed that Turner provided no medical support for his claim that he needed a special diet, and Turner had other food available to him such that he did not need to eat the greens to which he was allegedly allergic. Indeed, Turner did not experience any allergic reaction during his incarceration.

In fact, as noted, plaintiff's expert states that

---

[6] The Court thus need not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

[7] Plaintiff concedes that defendants Pangallo, Mullins, and Evans should be dismissed. (Doc. 215 at 1).

there is no medical support for plaintiff's alleged "greens" allergy, and he declined to opine as to this claim.

With respect to Turner's alleged reaction to mold, Turner now concedes in his response to SHP's motion for summary judgment that "there is no claim for his treatment of respiratory problems that are linked to the mold in his cell." (Doc. 215 at 3).

As to his alleged borderline diabetes (which has never been diagnosed by a doctor), Turner testified that he felt shaky several times, but that he did not seek medical treatment for it. There is no evidence that any of the SHP defendants knew of this alleged condition and were deliberately indifferent to it.

Turner thus cannot raise a triable issue as to whether the medical staff perceived a serious risk to his health and then ignored that risk.

All defendants are thus entitled to summary judgment on Turner's § 1983 claim. Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Turner's state law claims. *See* 28 U.S.C. § 1367(c).

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Elmer Ray Turner (Doc. 134) be, and is hereby, **GRANTED**; (2) the motion of Southern Health Partners for summary judgment as to plaintiff, Elmer Ray Turner (Doc. 212) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM**; and (3) Plaintiff Elmer Ray Turner's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE**.

This 5th day of July, 2013.



Signed By:
William O. Bertelsman  WOB
United States District Judge