**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

CIVIL ACTION NO. 2009-082 (WOB-JGW)

ANTHONY HOLT, ET AL.                                    PLAINTIFFS

VS.                          MEMORANDUM OPINION AND ORDER

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                                  DEFENDANTS

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the County and Southern Health Partners (SHP) alleging cruel and unusual punishment in violation of the 8th and 14th Amendments and plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege state law claims.

This matter is currently before the Court on the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Anthony Holt (Doc. 133), and the motion of Southern Health Partners for summary judgment as to plaintiff, Anthony Holt (Doc. 163).

Having reviewed this matter, the Court concludes that oral argument is unnecessary to the resolution of these motions. The Court therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

A.   **Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 132-1).   SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.   These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on June 17, 2009, as a proposed class action.   (Doc. 1).   On June 1, 2010, plaintiff filed a Second Amended Class Action Complaint, which is the operative complaint herein.   (Doc. 38). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 8th and 14th Amendment rights.   (Doc. 38 ¶¶ 331-32).   Plaintiffs also allege negligent or intentional infliction of emotional distress, negligence, loss of consortium, and wrongful death.

On July 9, 2010, this Court denied plaintiffs' motion for class certification.   (Doc. 48).   Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

2

### B.   Plaintiff Anthony Holt

Plaintiff Anthony Holt ("Holt") was incarcerated at the CCDC from April 29, 2008 to February 5, 2009.  (Holt Depo. 102).  He was forty-three years old at the time he began this incarceration.  (Doc. 133 Exh. 3).

Holt told the booking officer when admitted to the CCDC that he had been taking pain medication – Vicodin – for back pain and might experience withdrawal symptoms. (Doc. 133 Exh. 2).  He also indicated that he had high blood pressure.  (*Id.*).

The next day, SHP nurse Tracy Evans performed a medical intake screening on Holt.  (Doc. 163 Exh. 2).  Holt told Evans that he had been taking Vicodin, Zanaflex, and Flexaril every day for the past two to three years for back pain.  (*Id.*).  He also stated that he was currently taking Lisinopril for hypertension.  (*Id.*).

The same day, Holt began experiencing vomiting and diarrhea, and he told CCDC deputies Cummins and Woods and SHP nurse Amanda Pangallo ("Pangallo") that he was experiencing withdrawal.  The record contains a medical chart that shows that the medical staff immediately began monitoring Holt's vital signs and prescribed him three doses of Vistaril (one each on May 3, 4, and 5) and one dose of Clonidine (on May 4) to treat his withdrawal

3

symptoms.  (Doc. 133 Exh. 4).  In his deposition, however, Holt testified that he received no medicine for his withdrawal symptoms.  (Holt Depo. 123-27).  However, plaintiff's expert witness, Dr. Joseph Paris, notes in his report concerning Holt that, "After intake, detoxification of alcohol/opiates took place."  (Doc. 133 Exh. 65 at 6).

In any event, Holt testified that his withdrawal symptoms went away by May 6 or 7.  (Holt Depo. 118).

Holt testified that soon after he got to the CCDC, still in April 2008, he fell on a floor that was slick from being waxed and injured his hip.  (Holt Depo. 143).

On May 11, 2008, Holt submitted a medical request form complaining of chronic lower back and hip pain due to having had two discs removed and a sciatic nerve cut during a surgery prior to his incarceration.  (Doc. 163 Exh. 4). Holt also complained that he had not received any blood pressure medicine.  (*Id.*).

On May 15, 2008, Pangallo saw Holt, who indicated that his chronic back and hip pain had begun one and a half years earlier after back surgery.  (Doc. 163 Exh. 5). Pangallo prescribed Holt a fourteen-day course of Percogesic for his pain, and she took his blood pressure, which measured 125/86.  (*Id.*).

On May 19, May 25, and May 28, Holt again complained

4

about pain in his back and legs due to his past operation, stating that the pain medicine he was taking was not working.  (Doc. 163 Exhs. 6, 7, 8).  On June 3, Pangallo again saw Holt and changed his medicine to a thirty-day course of Naproxen to treat his pain.  (Doc. 163 Exh. 9). She also took Holt's blood pressure, which measured 123/89. (*Id.*).

Holt next filed medical requests on July 3, 7, 8 and 9 complaining of back, hip and leg pain, again attributing the pain to his prior back surgery.  (Doc. 163 Exh. 10). Holt was examined by a SHP nurse on July 11, and she prescribed him a thirty-day course of Percogesic for his pain.  (Doc. 163 Exh. 11).  The nurse also took Holt's blood pressure, which measured 120/80.  (*Id.*).

On July 9, 2008, Holt signed a medical records release so that SHP could obtain his pharmacy records from Wal-Mart.  (Doc. 163 Exh. 33).  The records received, however, did not show a prescription for blood pressure medicine, only for muscle relaxers.  (Waldridge Depo. 105-06).

On July 15, 2008, Holt submitted another medical request, requesting "something different for my pain [because] what you are giving me is not helping."  (Doc. 163 Exh. 12).  Two days later, SHP nurse Danielle Tucker ("Tucker") examined Holt.  She took his blood pressure,

which was 137/89, and she switched his medicine from Percogesic to a thirty-day course of Naproxen.

For the remainder of July, Holt continued submitting medical slips complaining of severe pain in his back and leg. (Doc. 163 Exh. 14). On July 28, Nurse Pangallo evaluated Holt and found his blood pressure to be 152/85, so she put him on the list to see the doctor. (Doc. 163 Exh. 15). During this evaluation, Holt noted that his back and hip pain dated back one year and were due to his sciatic nerve having been cut during surgery. (*Id.*).

Three days later, SHP physician Dr. Ronald Waldridge ("Waldridge") examined Holt. Waldridge diagnosed Holt with chronic back pain and prescribed him Fluoxetine, a generic form of Prozac, to treat both the pain and Holt's reported anxiety. (Waldridge Depo. 107) (Doc. 150); (Doc. 163 Exh. 16).[1]

Throughout August and September 2008, Holt filed more than two dozen medical slips, many complaining of his leg and hip pain, stating that he could hardly walk. (Doc. 163 Exh. 17). He also complained of side effects from the Prozac.

Nurse Tucker examined Holt on August 16 and 18,

---

[1] During this time, Holt also complained about a tooth infection, for which he received treatment, but that condition is not at issue herein.

continuing him on Naproxen and adding him to the doctor list. (Doc. 163 Exhs. 20, 21). Two days later, Holt was again evaluated by SHP, and his Prozac was discontinued and he was prescribed Celexa. (Doc. 163 Exh. 22).

On August 28, Nurse Tucker saw Holt, prescribed him 1000 mg of Tylenol, and added him to the doctor list. (Doc. 163 Exh. 24). On September 15, Tucker again evaluated Holt and added him to the doctor list to see about increasing his medication. (Doc. 163 Exh. 27). Tucker saw Holt again on September 25, placed him on the doctor list, and prescribed him 1000 mg of APAP for his pain. (Doc. 163 Exh. 29).

Five days later, SHP discontinued the Fluoxetine and placed Holt on Elavil. (Doc. 163 Exh. 22).

On October 15, 2008, Tucker again examined Holt, discontinued the Naproxen, and started Holt on Tramadol for pain, which he received twice daily for the remainder of his incarceration. (Doc. 163 Exh. 30).

On November 19, 2008, SHP brought in a portable x-ray service, which performed an x-ray of Holt's back, hip, and leg. (Doc. 163 Exh. 31). The Final X-Ray Report states: "The alignment of the neurocanal is normal as are the bones of the hips and pelvis visualized and also of the abdomen and bony thorax. Multiple views of the left femur show no

7

evidence of fracture, dislocation, or lytic or blastic lesions." (*Id.*).   The report further stated that the "bones of the hip and knee visualized are all normal." (*Id.*).

In late November, Holt sent a grievance to defendant Jim Daley, then the Deputy Jailer:

> I have talk[ed] to your medical staff about my chronic pain two disc removed had bad surgery from Dr. Ralfstein.  I got permanent nerve damage hip and leg[.]  I have a class act law suit me and 89 others try to shut him down . . .  In medical try to help me but they don't have the wright [*sic*] care that I need or medication I need.  I sent a letter to them to try to explain what I need.  I need to be transferred to a facility where I can be taken care of[.]  These two letters I sent I will need back from you please to send to my lawyer . . .

(Doc. 133 Exh. 59).

Daley forwarded this grievance to SHP, and Nurse Amy Autenrieb ("Autenrieb") responded to Holt:

> Inmate Holt you have been seen multiple times for your complaint of back and leg pain. **On 11-20-08 we had American Portable complete an L-Spine X-ray which came back negative and normal.  You have been put on the strongest anti-inflammatory and pain medication we have in the medical department Tramadol.  We have given you crutches to assist with your needs and there has been several times that the nurses have observed you moving about fine without any complications.**  You have stated that you were diagnosed through the Mayfield Clinic with chronic back problems and if this is the case then a MRI should have already been performed.  The medical department needs a release of information for medical records from this facility.  Your chart has also been reviewed many times by the nurse practitioner and the jail's physician.  At this time I do not feel that a transfer is medically

8

necessary.

(Doc. 133 Exh. 60) (emphasis added).

Daley also responded to Holt:

Mr. Holt: I am in receipt of your follow-up grievance on your medical issue related to your back. I did speak with medical and understand that you have signed the necessary release so that they can obtain medical information. I have asked that the Medical Department expedite obtaining the information and their review of the same. Once this is [done] they are to contact my office directly concerning their findings. Either my office or the medical department will follow up with you once the above has occurred.

(Doc. 133 Exh. 61).

After Autenrieb reviewed Holt's medical records from Mayfield Clinic, she sent Daley a memo summarizing the treatment he had received there and the doctor's findings. (Doc. 133 Exh. 62).[2]  Autenrieb noted that the Mayfield doctor stated that Holt's follow up exams after his 1/16/07 surgery were normal; that the sciatic nerve was intact upon closure of the surgical site; and that Mayfield had prescribed Holt Tramadol, the same drug that Holt was then taking at the CCDC.  (*Id.*).

In late 2008 and early 2009, Holt continued to complain of pain but he refused treatment, telling the nurses that the medical staff was "bull shit."  (Doc. 163 Exh. 32).

---

[2] By this time, Daley was no longer employed at the CCDC.

On January 20, 2009, Holt wrote a grievance to Daley's successor, Captain Jim Young ("Young"), reiterating his complaints about his chronic pain and the medical staff, and asking that he be transferred to a medical facility. (Doc. 163 Exh. 63).  Young responded to Holt two day later, stating:

> I am in receipt of your request for transfer to another facility.  I have been in contact with Population Coor. Volski about your request.  You will be contacted as soon as a decision has been made.

(Doc. 163 Exh. 64).

On February 2, 2009, Holt was called in to medical to discuss a grievance he filed.  He told Nurse Evans that he had a broken hip, and she explained that his x-ray had been normal.  (Doc. 163 Exh. 22).

Holt was transferred to the Roderer Correctional Complex four days later, on February 6, 2009.  He alleges in an affidavit that he received a medical evaluation at this facility and learned he had an untreated fractured hip.  (Holt Aff. ¶ 10) (Doc. 159-1).  However, the medical record of Holt's x-ray at Roderer states: "Results show moderate Osteoarthritis in left hip but otherwise unremarkable."  (Doc. 195-1).  After his release from jail, Holt had a hip replacement.

### *Analysis*

**A.   <u>Legal Standards</u>**

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws."  Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs."  *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain."  *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference."  *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a

11

subjective component.  *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  With respect to medical needs, the need "must be objectively, 'sufficiently serious.'"  *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Id.* at 424 (internal quotations and citation omitted).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

B.  **Qualified Immunity**

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity.  All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

C.  **Application to Holt's Claims**

1.  **Objectively Serious Medical Need**

"A plaintiff may establish the serious medical needs requirement in one of two ways.  First a medical need is sufficiently serious if it is 'so obvious that even a lay person would easily recognize the necessity for a doctor's

13

attention.'" *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).

Second, "if the medical need is less obvious, its seriousness is evaluated by the effect of delay in treatment," and plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id.*

Holt initially raised three medical conditions as the basis for his § 1983 claim: treatment for drug withdrawal, high blood pressure, and chronic back and hip pain.

As to Holt's high blood pressure, it is undisputed that his pressure was routinely monitored during his incarceration, and only on one occasion did the reading approach "high." (Waldridge Depo. 111-12). Dr. Waldridge testified that this reading in and of itself did not indicate a need for medication, particularly because the pain Holt was experiencing could have elevated his blood pressure, and because there were more normal blood pressure readings than abnormal ones over the course of his incarceration. (*Id.*).

Furthermore, when the CCDC obtained Holt's pharmacy records, there was no blood pressure medication listed. Finally, plaintiff's own expert, Dr. Parris, opined that

14

"Holt did not need chronic blood pressure medications."
(Doc. 133 Exh. 65 at 3).

Holt thus cannot show as a matter of law that his
alleged high blood pressure constituted a serious medical
need.[3]

With respect to Holt's withdrawal from his regular
intake of Vicodin, courts "have found withdrawal symptoms
to qualify as a serious medical need." *French v. Daviess
County, Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010)
(citations omitted).

The Court will thus assume that Holt's withdrawal
symptoms, as well as his chronic back/leg/hip pain, were
serious medical needs for purposes of his § 1983 claim.

## 2.   Deliberate Indifference

Even assuming those two medical conditions were
serious medical needs, there is no evidence from which a
reasonable jury could conclude that any of the defendants
were deliberately indifferent to those needs.

---

[3] The Court also notes that Holt effectively abandoned his
claim based on his blood pressure given that his response
to the CCDC defendants' motion for summary judgment devotes
only one sentence to the issue (Doc. 159 at 6), and he does
not address it at all in his response to the SHP
defendants' motion.

### a.   CCDC Defendants[4]

Holt argues that defendants Buckler and Daley were aware of facts from which they could, and did, draw an inference that a substantial risk of serious harm existed as to Holt's health.  This argument fails as a matter of law because there is no such evidence in the record.

First, there is no evidence that either Buckler or Daley were aware of Holt's withdrawal symptoms or that they had any involvement with his treatment for those symptoms. That aspect of his claim thus fails.[5]

Further, Holt concedes that Buckler, the former Jailer, had no contact with him during his incarceration (Holt Depo. 49-51), nor is there any evidence that Buckler was involved in any of the medical decisions involving Holt.  Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler is thus entitled

---

[4] In his responsive memorandum, Holt concedes that CCDC defendants Fickenscher and "Fisher" should be dismissed. (Doc. 159 at 1).  There is no defendant named Fisher; it appears that plaintiff means defendant Lisa Fletcher.

[5] The Court thus need not reach the CCDC defendants' argument (asserted for the first time in their reply brief) that Holt's claim based on his withdrawal symptoms is time-barred because his § 1983 claim was filed more than a year after the events related to his drug withdrawal.

16

to summary judgment.[6]

As to Daley, his only involvement with Holt was handling the November 2009 grievance that Holt filed complaining of his medical care.  That grievance makes no mention of Holt's alleged fall or his alleged fractured hip.  To the extent that the grievance expressed dissatisfaction with his medical care, Daley's response does not demonstrate deliberate indifference.

Daley forwarded the grievance to the medical staff, who reviewed Holt's medical file and reported the various actions that had been taken to address Holt's pain.  Daley also responded directly to Holt, noting that he had instructed the medical staff to expedite obtaining Holt's records from Mayfield Clinic, and that appropriate follow-up would occur once those records were reviewed.  Daley left his position at the CCDC shortly thereafter, and Holt's case was handled by Daley's successor, Captain Young.

Thus, no reasonable jury could conclude that Daley was aware of any serious risk to Holt's health due to his

---

[6] Holt argues that Buckler was aware of general problems with the medical contractor at the CCDC.  That, however, provides no basis for the claim against him in his individual capacity where it is undisputed that Buckler played no role in Holt's care.

17

chronic pain and that he disregarded that risk.

With no underlying constitutional violation, Holt can state no "municipal liability" claim as to Campbell County. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).[7]

For these reasons, all the CCDC defendants are entitled to summary judgment.[8]

### b.    SHP Defendants[9]

With respect to the SHP defendants, the Court first notes that Holt has abandoned his claim based on his withdrawal symptoms because his responsive memorandum

---

[7] Holt also has adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs.  This Court has already held in another case that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County.  *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

[8] The Court thus need not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

[9] Plaintiff concedes that SHP defendant Ernest should be dismissed.  (Doc. 183 at 1).

addresses only his chronic back/hip/leg pain.[10]

With respect to his chronic pain, Holt argues that the medical staff failed to prescribe him medicine that alleviated his pain, and that such failure constituted deliberate indifference.  This argument fails for several reasons.

First, Holt does not dispute that, within four days of his first complaint of back and leg pain, the medical staff evaluated him and began prescribing him medications to address his pain, including anti-inflammatories and various pain medications.  While Holt argues that the sheer volume of the medical requests he submitted demonstrates that the medical staff's response to his pain was deliberately indifferent, this ignores the undisputed evidence that the SHP defendants regularly evaluated Holt and continued to

---

[10] Even had plaintiff not abandoned this claim, it would fail as a matter of law.  The record contains undisputed evidence that Holt received medication for his withdrawal symptoms, and his own expert witness noted the same.  The fact that Holt denied in his deposition that he had received treatment for his withdrawal symptoms thus creates no triable issue.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on motion for summary judgment.").  *See also Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 779 (6th Cir. 2009) (holding that plaintiff's testimony as to identity of booking officer raised no triable issue where it was contradicted by record evidence).

adjust his medications to address his pain, ultimately prescribing him the strongest pain medicine they had at the facility, which was the same drug that had been prescribed by his doctors at the Mayfield Clinic.

In this context, Holt's numerous and often duplicative medical requests do not demonstrate deliberate indifference, nor does his disagreement with the course of action taken by the medical staff. *See White v. Corr. Med. Serv., Inc.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("Although White did not receive the care he wanted, the conduct he alleged did not constitute a deliberate indifference to his medical needs."); *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (noting that where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.") (citation omitted).

Further, when Holt continued to complain of the pain, SHP arranged for a portable x-ray facility to come to the CCDC and perform an x-ray on Holt.  This x-ray, as discussed above, showed normal results for Holt's hip,

back, and leg.[11]

Second, Holt's allegation that he fell shortly after booking into the CCDC and broke his hip raises no triable issue. Notably, Holt does not allege or testify that he ever told anyone on the medical staff that he had fallen and that he thought he had injured his hip as a result.

In fact, in his medical requests, Holt consistently and repeatedly attributed his back/hip/leg pain to the surgery he had undergone prior to his incarceration.

It was only on February 2, 2009, just before his transfer out of the CCDC, that Holt told Nurse Evans that he had a broken hip. In response, Evans explained to Holt that the results of his x-ray had been normal. (Doc. 163 Exh. 22).

Further, the medical documentation from the facility to which Holt was then transferred shows that an x-ray performed at that facility on February 5, 2009 revealed "moderate Osteoarthritis" in Holt's left hip, which was "otherwise unremarkable." (Doc. 195-1).

There is thus no verifying medical evidence that Holt actually suffered any fracture of his hip while at the

---

[11] Holt complained in his deposition that the x-ray taken only imaged his back (Holt Depo. 147-149), but the undisputed record evidence shows that he is simply mistaken. (Doc. 163 Exh. 31).

CCDC.

The report of plaintiff's expert, Dr. Paris, also raises no genuine dispute of fact as to deliberate indifference.  While Dr. Paris states that the "[w]orkup of left hip chronic pain was slow," (Doc. 133 Exh. 65 at 3), this suggests, at most, negligence.  "Deliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence, inadvertence, or good faith error."  *Bruederle*, 687 F.3d at 777 (citation omitted).

Moreover, Dr. Paris notes in his report that the "treatment of chronic, non-malignant pain in jails is controversial, especially when one considers that high rates of abuse of narcotics and other drugs by the jail population prior to incarceration." (Doc. 133 Exh. 65 at 3).  Dr. Paris does not opine that the medications prescribed to Holt were so deficient as to constitute a deliberate indifference to his pain.  His statement that Holt's care at the CCDC was "lacking" and "may have reached the level of deliberate indifference" raises no triable issue.

Specifically as to Holt's hip, Dr. Paris makes no mention of any alleged injury that Holt suffered to his hip at the CCDC, and he discusses only generally the debate

22

over the optimal timing of hip replacements.  On that issue, he declines to offer an opinion, deferring to "another expert with experience in Orthopedics."  (Doc. 133 Exh. 65 at 4).[12]

Finally, as to any "Incidental medical complication" that Holt suffered as a result of the allegedly deficient care at the CCDC, Dr. Paris states: "None."  (*Id.*).

Holt thus cannot raise a triable issue as to whether the medical staff perceived a serious risk to his health and then ignored that risk.

All defendants are thus entitled to summary judgment on Holt's § 1983 claim.  Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Weber's state law claims.  *See* 28 U.S.C. § 1367(c).


Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Anthony Holt (Doc. 133) be, and is hereby, **GRANTED;** (2) the motion of Southern Health Partners for summary judgment as to plaintiff, Anthony Holt (Doc. 163) be, and is hereby,

---

[12] Of course, Holt does not allege that he ever requested a hip replacement while incarcerated at the CCDC.

**GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM**; and (3) Plaintiff

Anthony Holt's state law claims be, and are hereby,

**DISMISSED WITHOUT PREJUDICE.**


This 19th day of July, 2013.




Signed By:

_**William O. Bertelsman**_  WOB

**United States District Judge**