```
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF KENTUCKY
                  NORTHERN DIVISION
                    AT COVINGTON
```

CIVIL ACTION NO. 2009-082 (WOB-JGW)

ANTHONY HOLT, ET AL.                                PLAINTIFFS

VS.                    MEMORANDUM OPINION AND ORDER

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                              DEFENDANTS

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the County and Southern Health Partners (SHP) alleging cruel and unusual punishment in violation of the 8th and 14th Amendments and plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege state law claims.

This matter is currently before the Court on the motion of the Campbell County defendants for partial summary judgment as to plaintiff, James Stull (Doc. 141), and the motion of Southern Health Partners for summary judgment as to plaintiff, James Stull. (Doc. 208).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of these motions. The Court therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

A.  **Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 132-1).  SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on June 17, 2009, as a proposed class action.  (Doc. 1).  On June 1, 2010, plaintiff filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 38). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 8th and 14th Amendment rights.  (Doc. 38 ¶¶ 331-32).  Plaintiffs also allege negligent or intentional infliction of emotional distress, negligence, loss of consortium, and wrongful death.

On July 9, 2010, this Court denied plaintiffs' motion for class certification.  (Doc. 48).  Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

B.  **Plaintiff James Stull**

Plaintiff James Stull was booked into the CCDC on October 26, 2009, after being arrested for drunk driving. (Doc. 141 Exh. 2). He received a five-day sentence and was released on October 30, 2009. (*Id.* Exh. 3).

Stull advised the booking staff that he required treatment for various medical conditions, including high blood pressure, high cholesterol, anxiety, depression, hepatitis C, and seizures. (*Id.* Exh. 6). He also advised the staff that he had attempted suicide four times, and that he had been hospitalized in the last year for overdosing on his blood pressure medicine. (*Id.*). Although the records do not reflect it, Stull alleges that he also told unknown deputies that he had sleep apnea and needed to sleep with a C-PAP machine.

The intake form indicates that Stull stated that he believed he should be separated from other inmates at the jail, and that he understood he could request health care at the jail. (*Id.*). Based on this information, the jail placed Stull on "high watch" and put him in an isolation cell. Stull alleges that he was placed in a "turtle suit" -- described as a green hospital gown which came down to his knees with padding down the front and Velcro straps around the sides (Stull Depo. 123, 156) -- which did not

cover his entire body such that he was cold, embarrassed, and uncomfortable. However, Stull was also given a blanket. (Stull Depo. 157).

After booking, Stull saw a member of the medical staff and advised her of his medical conditions. (*Id.* Exh. 5; Stull Depo. 137). The nurse explained that any medications that were brought in by family members for an inmate would have to be verified with the pharmacists or prescribing physician. (Stull Depo. 138). Stull is not sure if he told the nurse about his sleep apnea because he was still intoxicated at the time. (Stull Depo. 174).

Medical staff records reflect that, after this initial screening, Stull was given his nighttime dosages of medications for high cholesterol, high blood pressure, seizures, and anxiety: Gemfibrozil, Metroprolol, Lamotrigine, Levetiracetam, Sprironolactone, and Benazepril. (Doc. 208 Exh. 4). The form also states that Stull was to continue to receive these medications while incarcerated. Medical records indicate that all these medicines, except for the Promethazine, were given to Stull during the five days he was at the CCDC. (Doc. 208 Exh. 5).

Stull called his mother to bring his medications and his C-PAP machine. Medical records note that 5 Tramadol,

4

11 Zolpidem Tartate (Ambien), and 2 Clonazepam were brought in for Stull. These medications do not appear to have been given to Stull but they were returned to him upon discharge. (Doc. 208 Exh. 7).

However, Stull's mother did not bring his C-PAP machine, and no one at the jail ever told him he would not be allowed to use it. (Stull Depo. 169-70).[1]

Despite the above records, Stull alleges that, other than one pill for blood pressure, he received no medication during his stay at the CCDC. However, Stull submitted no sick call slips asking for medications or medical attention. (Stull Depo. 136). He claims, however, that he told Deputy Kunkel[2] repeatedly that he needed his medications, and Kunkel told him they would call the nurse. (Stull Depo. 145-47).

Stull alleges that he suffered chest pains, vomiting, sweating, water retention, stomach pain, swelling in his ankles, and headaches as a result of the alleged failure to receive his medications. (Stull Depo. 149-52). He alleges

---

1 Stull's assertion in his brief that he was "denied his CPAP machine" is thus flatly contradicted by his own testimony. *See* Doc. 174 at 3. His same assertion in his later affidavit thus contradicts his deposition testimony, *see* Doc. 174-1 ¶ 10, and raises no triable issue. *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006).

2 Deputy Kunkel is not a defendant in this action.

that he told unnamed deputies that he needed to see a doctor. (*Id.*) He also testified that he could not sleep due to anxiety about not having a C-PAP machine.

Stull also alleges that he was forced to take four very cold showers while incarcerated. Stull filed no grievances concerning any of these matters. (Stull Depo. 59).

Twenty days after his discharge from the CCDC, Stull saw his treating physician, who noted that Stull had gained nine pounds in the past month, but that his blood pressure had been checked regularly and had good readings. (Doc. 208 Exh. 8).

*Analysis*
### A. <u>Legal Standards</u>

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006)(citing *Estelle v. Gamble*, 429 U.S. 97,

6

103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to

7

alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

### B. Qualified Immunity

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity. All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government

8

official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### C. Application to Stull's Claims

#### 1. Objectively Serious Medical Condition

Defendants assume for purposes of summary judgment that Stull suffered from one or more objectively serious health conditions or that there is a triable issue on that element. The Court thus also assumes that this element is satisfied.

#### 2. Deliberate Indifference

##### a. CCDC Defendants

Construing the evidence in Stull's favor, no reasonable jury could conclude that any of the CCDC defendants were deliberately indifferent to his medical needs.

Stull has conceded that he has no claim against defendants Daley, Fletcher, and Fickenscher, thus leaving Greg Buckler as the only individual CCDC defendant. (Doc. 174 at 1). However, Stull testified that, other than seeing Buckler walk through a door on one occasion, he had no interaction with Buckler during his incarceration. (Stull Depo. 62-63). *See also* Doc. 174 at 6 ("Defendant

9

Buckler had almost no contact with the general population, much less with Mr. Stull specifically."). Nor did Stull file any grievance concerning the alleged deficiencies in his medical care. There is thus no evidence that Buckler had any knowledge or awareness of Stull's alleged medical needs, and he cannot have been deliberately indifferent to them as a matter of law.[3]

As to Campbell County itself, Stull's claim fails because he has shown no violation of his constitutional rights. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Stull also has adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs. This Court has already held that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County. *Fryman v. Campbell County*,

---

[3] Stull argues that Buckler was aware generally of problems with the medical care at the CCDC. (Doc. 174 at 6-8). That, of course, provides no basis for the claim against this defendant in his individual capacity where it is undisputed that he played no role in Stull's medical care.

10

Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

For these reasons, all the CCDC defendants are entitled to summary judgment.[4]

### b.  SHP Defendants

No reasonable jury could find that the SHP defendants were deliberately indifferent to a risk of serious harm to Stull's health.

First, Stull has conceded that he has no claim against defendants Pangallo, Mullins, and Evans because they did not work at the CCDC during the time period in question. (Doc. 214 at 1).

This leaves SHP defendants Dr. Waldridge, Betty Dawes, and Josh Ernest.[5]  However, Stull has adduced no evidence that he had any contact with these three defendants while incarcerated at the CCDC.  In fact, in his response to SHP's motion for summary judgment, Stull makes no allegation that any of these three defendants had any

---

[4] The Court thus need not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

[5] There are other individuals named as SHP defendants still showing on the docket of this case (Jamie Winters, Stevie Mullins, Ms. Taylor, and Danielle Tucker), but the parties do not discuss them in their briefs.  Because Stull has adduced no evidence pertaining to these defendants, the Court assumes that he has abandoned any claims he had against them.

knowledge of Stull or his medical conditions.

A review of the pertinent medical records indicates that the nurse who conducted Stull's initial screening and who, according to the records, began giving him his medications, was Jillian Hehman. (Doc. 208-4 at 2). Hehman was also one of the persons who recorded the receipt of some of the medications that Stull's mother brought to the jail. (Doc. 208-8 at 2). However, Hehman is not a defendant herein. Nor is "Amy R.," who also recorded the receipt of some of Stull's medications from his mother. (Doc. 208-8 at 3).

With no evidence of any knowledge of Stull's medical conditions on the part of these individuals, Stull cannot show that they were deliberately indifferent to his medical needs.

Further, under the above authority, absent a showing of an underlying constitutional violation, Stull can state no claim against SHP as an entity. In addition, for the same reasons discussed as to the CCDC defendants, Stull has adduced no admissible evidence to establish any unconstitutional pattern or policy by SHP relating to inmate medical care.

There are other flaws in Stull's deliberate indifference claim, but they need not be addressed here

12

given that Stull has failed the threshold requirement of showing that the individuals named as defendants had any knowledge of his medical needs.

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the motion of the Campbell County defendants for partial summary judgment as to plaintiff, James Stull (Doc. 141) be, and is hereby, **GRANTED;** (2) the motion of Southern Health Partners for summary judgment as to plaintiff, James Stull (Doc. 208) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM**; and (3) Plaintiff James Stull's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**

This 17th day of September, 2013.



Signed By:
William O. Bertelsman  WOB
United States District Judge