**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 2009-082 (WOB-JGW)**

**ANTHONY HOLT, ET AL.**                          **PLAINTIFFS**

**VS.**              **MEMORANDUM OPINION AND ORDER**

**CAMPBELL COUNTY, KENTUCKY,
ET AL.**                                          **DEFENDANTS**

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the County and Southern Health Partners (SHP) alleging cruel and unusual punishment in violation of the 8th and 14th Amendments and plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege state law claims.

This matter is currently before the Court on the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Arvil Pennington (Doc. 140), and the motion of Southern Health Partners for summary judgment as to plaintiff, Arvil Pennington. (Doc. 207).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of these motions. The Court therefore issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

**A.    Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Doc. 132-1). SHP, in turn, contracts with a physician and employs nurses to staff the CCDC. These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on June 17, 2009, as a proposed class action. (Doc. 1). On June 1, 2010, plaintiff filed a Second Amended Class Action Complaint, which is the operative complaint herein. (Doc. 38). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 8th and 14th Amendment rights. (Doc. 38 ¶¶ 331-32). Plaintiffs also allege negligent or intentional infliction of emotional distress, negligence, loss of consortium, and wrongful death.

On July 9, 2010, this Court denied plaintiffs' motion for class certification. (Doc. 48). Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

### B. Plaintiff Arvil Pennington

Plaintiff Arvil Pennington has been incarcerated at the CCDC on numerous occasions; however, the only period of time at issue in this matter is August 27, 2009 to December 28, 2009.[1]

#### 1. Withdrawal Symptoms

Pennington first alleges that he received inadequate treatment for withdrawal symptoms. An intravenous heroin user, Pennington began experiencing withdrawal symptoms the day after he was booked into the CCDC. (Doc. 140, Exh. 4). He told jail staff of his symptoms, and he saw the medical staff later that day. (Doc. 140, Exh. 5) Medical staff prescribed him a daily dose of Phenergan to relieve his nausea. (*Id.*).

Pennington alleges that this treatment was ineffective and that he suffered from nausea, diarrhea, aches, loss of appetite, and hot and cold flashes for about a week. (Pennington Depo. at 62). However, he did not fill out any further sick call slips for withdrawal symptoms, and he did not file a grievance regarding the alleged lack of treatment for withdrawal. (*Id.* at 65-66).

---

1 Pennington also originally included a claim based on his treatment for a MRSA infection in 2007, but he has conceded that that claim is time-barred. (Doc. 172 at 1).

## 2. Testing/Treatment for Hepatitis C

On September 3, 2009, Pennington submitted a sick call slip requesting testing for HIV, hepatitis C, and sexually-transmitted diseases. (Doc. 140 Exh. 6). Pennington testified that he thought he should have these tests because he had used needles to take drugs, and he had stomach pains and was tired all the time. (Pennington Depo. at 68-70). He alleges that the nurses told him he could not receive such blood tests at the CCDC. (*Id.* at 74-75).

Pennington also alleges that the nurses told him he needed a court order to get such blood tests, so he sent a letter/motion to the Campbell County Circuit Court at the end of October or early November. (Doc. 140 Exh. 7). This letter states that Pennington wanted such tests because of his status as an IV drug user, but it does not state that he was suffering any symptoms of such diseases. (*Id.*).[2]

A copy of Pennington's letter was stamped as received by CCDC Lt. Col. Dave Fickenscher on November 9, 2009. (*Id.*). Fickenscher treated the letter as a grievance and responded to Pennington on November 17, 2009:

---

2 Pennington testified that he sent an additional letter to the CCDC and medical staff similar in substance to this motion, but defendants state no such letter was found in his file.

> Inmate Pennington, I am in receipt of your grievance. This information was passed to medical for information for a response in regards to the medical issues in your note. Medical has advised that they do not test for STD/HIV/Hepatitis unless complications arise. If you have concerns you may fill out a sick call request form and discuss your medical issues with the department.

(Doc. 140 Exh. 8). Pennington did not appeal this response. (Pennington Depo. 80).

On December 11, 2009, Pennington filed another sick call slip requesting that he be tested for "Aids, Hep-C and STDs." (Doc. 140 Exh. 9). Medical responded that because he was asymptomatic, no such testing would be ordered. (*Id.*).

Pennington filed a second motion with the Campbell Circuit Court requesting testing, which is stamped as received by the CCDC on December 16, 2009. (Doc. 140 Exh. 11). Fickenscher again treated the motion as a grievance, requested information from the medical staff, and responded to Pennington that "[n]ecessary medical treatment does not include testing for infectious diseases for which you have no symptoms." (Doc. 140 Exh. 12). Pennington did not appeal this response. (Pennington Depo. 83).

On December 28, 2009, Pennington was transferred to a state prison, where he later tested positive for hepatitis C. (Pennington Depo. 32). He has since had his blood

tested every 90 days, but his enzyme levels have not been elevated and he has not required medication. (*Id.* at 44). He was also tested for HIV and STDs, and those tests were negative.

Since being discharged from the CCDC, Pennington has not been treated for any injuries that he claims he suffered as a result of his medical treatment at the jail. (*Id.* at 46-47).

## *Analysis*

### A. Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under this provision, "a prisoner must exhaust all of his available remedies before filing a § 1983 action in federal court." *Brock v. Kenton County, Ky.*, 93 Fed. App'x 793, 796 (6th Cir. 2004) (citation omitted). "That is, under the PLRA, exhaustion of available administrative remedies is a mandatory pre-condition to filing suit in federal court." *Id.* at 798 (citation omitted).

"The Sixth Circuit requires some affirmative efforts

to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier v. Laurel Jackson, Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) (citation omitted). *See also Brock*, 93 F. App'x at 798 (noting that the prisoner "must make some affirmative efforts to comply with the administrative procedure" and that the procedures are "unavailable" only where, despite the prisoner's efforts, the facility thwarts the inmate's attempts at exhaustion).

It is not disputed that Pennington was incarcerated at the time this lawsuit was filed, and he is thus a "prisoner" for purposes of PLRA exhaustion.[3] Further, his claims clearly pertain to "conditions of confinement" as he alleges that he received inadequate medical care while incarcerated at the CCDC.

Further, defendants have attached to their motion for summary judgment evidence of the CCDC's grievance process and the means through which inmates are informed of it. (Doc. 140-2, Affidavit of Greg Buckler).[4] Once defendants

---

[3] It does not matter that the plaintiff was incarcerated at a facility other than the one where the alleged mistreatment occurred. *Id.* at 222.

[4] Indeed, this Court has already held in this matter that the CCDC has an administrative grievance process which is communicated to inmates. *See* Doc. 131.

7

put forward this evidence, Pennington is "required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (citation omitted).

Pennington concedes that he did not attempt to file a grievance concerning the allegedly inadequate treatment for withdrawal symptoms (Doc. 172 at 4), although he was aware that if he was dissatisfied with his medical care at the CCDC he could file a grievance. (Pennington Depo. 62).[5] Under the above authority, therefore, Pennington's claim based on the treatment for withdrawal is barred for failure to exhaust under the PLRA.

However, even if the Court assumes that Pennington's claim is not barred for lack of exhaustion, it still fails as a matter of law.

B. **Legal Standards**

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights,

---

[5] Plaintiff's brief states: "Early on in his incarceration, when the withdrawal symptoms were occurring he was not aware that an inmate could file a grievance." (Doc. 172 at 4). This misrepresents Pennington's testimony. He testified that he did not know he could get *medical treatment* during the booking process, but that he knew generally that he could request medical treatment while incarcerated at the CCDC. The cited testimony says nothing about the grievance process.

8

privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment rights to be free from cruel and unusual punishment were violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

### C. Qualified Immunity

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity. All defendants here assert this defense.

"The doctrine of qualified immunity protects

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### D. Application to Pennington's Claims

#### 1. Objectively Serious Medical Condition

"A plaintiff may establish the serious medical needs requirement in one of two ways. First a medical need is sufficiently serious if it is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)).

Second, "if the medical need is less obvious, its seriousness is evaluated by the effect of delay in treatment," and plaintiff must "place verifying medical evidence in the record to establish the detrimental effect

11

of the delay in medical treatment." *Id.*

Courts "have found withdrawal symptoms to qualify as a serious medical need." *French v. Daviess County, Ky.*, 376 F. App'x 519, 522 (6th Cir. 2010) (citations omitted). The Court will thus assume that Pennington's withdrawal symptoms constituted a serious medical need.

As to hepatitis C, however, Pennington's alleged symptoms -- fatigue and abdominal pains -- were not "obvious" to a layperson, and Pennington must thus meet the above evidentiary standard by adducing medical evidence that the alleged delay in treatment had a detrimental effect. Pennington has not done so.

Indeed, he testified in his deposition that he is not alleging that he had any liver or kidney damage as a result of not being tested for hepatitis C at the CCDC, and no doctor has ever told him that he has any such damage. (Pennington Depo. 90, 102). Further, plaintiffs' expert witness, Dr. Joseph Paris, opined that Pennington suffered no medical complications from the alleged deficiencies in his medical care at the CCDC. (Doc. 140 Exh. 10 at 3).[6]

---

[6] Further, even if the lack of testing for hepatitis constituted a serious health condition, Pennington cannot raise a triable issue as to deliberate indifference. Dr. Paris also opined that Pennington's liver function tests were normal, he was "asymptomatic," he was not a candidate for hepatitis therapies due to his relatively short stay at

Thus, the only serious medical condition which may form the basis for Pennington's § 1983 claims is his treatment for withdrawal symptoms.

### 2. Deliberate Indifference

#### a. CCDC Defendants

Assuming Pennington's heroin withdrawal constituted a serious health condition, there is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to that medical need.

Specifically as to the CCDC defendants[7], it is not disputed that the deputy jailers do not make decisions as to which inmates receive medical care or what care they receive; rather, such decisions are made by the medical staff. (Pennington Depo. 61). Inmates submit sick call slips directly to the nurses, who decide what action to take in response. (*Id.*).

Moreover, Pennington testified that he does not know who Jim Daley is and has never talked to him. (Pennington Depo. 44). Indeed, it is not disputed that Daley was not working at the CCDC during the time period at issue here. (Daley Depo. 64, 67). Similarly, Pennington concedes that

---

the CCDC, and he suffered no adverse effects from the lack of testing. (Doc. 140, Exh. 10 at 3).

[7] Pennington has conceded that he has no claim against defendant Lisa Fletcher. (Doc. 172 at 1).

13

he had no contact with defendant Greg Buckler. (Doc. 172 at 10). Pennington thus cannot show that either of these defendants were subjectively aware of his medical condition and were deliberately indifferent to it.[8]

Finally, Pennington has adduced no evidence that defendant Fickenscher was aware of Pennington's withdrawal symptoms or played any role in the treatment he received for them. (Doc. 172 at 14).

As to Campbell County itself, Pennington's claim fails because he has shown no violation of his constitutional rights. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Moreover, Pennington actually admits that Campbell County has adequate policies in place concerning inmate medical care. (Doc. 172 at 15). Although plaintiff alleges those policies were not followed here, such an allegation does not advance his municipal liability claim. *See Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th

---

[8] Pennington argues that these two defendants were aware generally of problems with the medical care at the CCDC. That, of course, provides no basis for the claims against these defendants in their individual capacities where it is undisputed that they played no role in Pennington's medical care.

Cir. 2004) ("There can be no municipal liability where an otherwise sound program has occasionally been negligently administered.") (citation and internal quotations omitted).

Pennington also has adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs. This Court has already held that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

For these reasons, all the CCDC defendants are entitled to summary judgment.[9]

### b. SHP Defendants[10]

No reasonable jury could find that the SHP defendants were deliberately indifferent to a risk of serious harm to Pennington's health.

Medical staff evaluated Pennington the same day that

---

[9] The Court thus need not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

[10] Pennington has conceded that defendants Mullins, Evans, and Pangallo should be dismissed because they did not work at the CCDC during the time period in question. (Doc. 213 at 1).

he first complained of withdrawal symptoms and put him on a heroin withdrawal protocol, prescribing him a daily dose of anti-nausea medication. (Doc. 207, Exhs. 2,3) While he alleges that he continued to suffer symptoms, he has adduced no evidence that the medical staff, in choosing which medication to prescribe him, subjectively perceived any risk of serious harm to him and then disregarded that risk.

Indeed, Pennington concedes that he filled out no further sick call slips pertaining to his withdrawal, and his symptoms subsided within a week.

Further, Pennington testified that he did not suffer any permanent injuries due to the alleged inadequacy in the treatment he received for his withdrawal symptoms. (Pennington Depo. 67). His expert, Dr. Paris, states in a conclusory fashion that the treatment for withdrawal "was lacking" and "may" have constituted deliberate indifference, but at the same time he opines that Pennington suffered no medical complications as a result.

It is well established that a difference of opinion as to the approach to an inmate's medical treatment does not demonstrate the "deliberate indifference" necessary to state a claim under the Eighth Amendment. *See White v. Corr. Med. Serv., Inc.*, 94 F. App'x 262, 264 (6th Cir.

2004) ("Although White did not receive the care he wanted, the conduct he alleged did not constitute a deliberate indifference to his medical needs."); *Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (noting that where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.") (citation omitted); *Alder v. Corr. Med. Serv.*, 73 F. App'x 839, 841-42 (6th Cir. 2003) (difference of opinion as to treatment does not rise to level of Eighth Amendment violation); *McKee v. Turner*, No. 96-3446, 1997 WL 525680, at *5 (6th Cir. Aug. 25, 1997); *Sharpe v. Patton*, Civil Action No. 08-CV-58-HRW, 2010 WL 227702, at *10-11 (E.D. Ky. Jan. 19, 2010).

Pennington thus cannot raise a triable issue as to whether the medical staff perceived a serious risk to his health and then ignored that risk.

All defendants are thus entitled to summary judgment on Pennington's § 1983 claim. Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Pennington's state law claims. *See* 28 U.S.C. § 1367(c).

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the motion of the Campbell County defendants for partial summary judgment as to plaintiff, Arvil Pennington (Doc. 140) be, and is hereby, **GRANTED;** (2) the motion of Southern Health Partners for summary judgment as to plaintiff, Arvil Pennington (Doc. 207) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** and (3) Plaintiff Arvil Pennington's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE**.

This 17th day of September, 2013.



Signed By:
William O. Bertelsman  WOB
United States District Judge